UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FRANKLIN HAMMITT, <br><br> Plaintiff, <br><br> v. <br><br> BUTTE COUNTY JAIL, et al., <br><br> Defendants. | No. 2: 16-cv-2644 KJN P <br><br><br> ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment filed November 27, 2017. (ECF No. 38.) On January 29, 2018, plaintiff filed an opposition. (ECF No. 46.) On February 5, 2018, defendants filed a reply to plaintiff's opposition. (ECF No. 48.)

For the reasons stated herein, the undersigned recommends that defendants' summary judgment motion be denied.

II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on March 8, 2017 (ECF No. 14), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

III. Plaintiff's Claims

This action proceeds on the first amended complaint filed January 27, 2017, as to defendants Butte County Jail and Butte County Sheriff Honea. (ECF No. 10.) Plaintiff names defendant Honea in both his individual and official capacities.

Plaintiff alleges that defendants have a policy of refusing to provide mental health treatment to inmates with a history of drug abuse. Plaintiff alleges that he suffers from bipolar disorder and manic depression. Plaintiff also alleges that he has a history of drug abuse. Plaintiff alleges that he failed to receive treatment for his mental health problems while housed at the Butte County Jail based on defendants' policy of refusing to provide mental health treatment to drug abusers. Plaintiff alleges that his failure to receive mental health treatment violated the Eighth Amendment.

IV. Analysis

Neither party has clearly addressed whether plaintiff was a convicted prisoner or pretrial detainee during the relevant time period.[1] However, as discussed herein, defendants state that plaintiff was "booked into the jail on September 20, 2016," suggesting that plaintiff was a pretrial detainee during the relevant time period. (ECF No. 41 at 4.) Accordingly, for purposes of this summary judgment motion, the undersigned presumes that plaintiff was a pretrial detainee at all relevant time periods.

The undersigned also observes that while plaintiff alleges violations of the Eighth Amendment, claims alleging inadequate medical care by pretrial detainees are properly brought under the Fourteenth Amendment. See Gordon v. County of Orange, 888 F.3d 1118, 1124 (9th Cir. Apr. 30, 2018.) Accordingly, the undersigned evaluates plaintiff's claims under the Fourteenth Amendment.

////

////

---

[1] In a footnote, defendants state that plaintiff "may have been" a pretrial detained during his incarceration at the Butte County Jail. (ECF No. 38 at 9 n. 2.) The undersigned is puzzled by defendants' failure to provide evidence clarifying whether plaintiff was a detainee or convicted prisoner.

A. Monell Claims

Plaintiff alleges a Monell[2] claim against defendant Butte County Jail and defendant Honea in his official capacity. Plaintiff's official capacity suit against defendant Honea is another way of pleading an action against defendant Butte County Jail, of which defendant Honea is an agent. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

*Legal Standard*

Municipalities responsible for detaining arrestees in a custodial facility have a duty to provide those detainees with medical care for serious medical needs. This duty arises from the Fourteenth Amendment's Due Process Clause. Gordon v. County of Orange, 888 F.3d at 1124 (9th Cir. 2018). To allege municipal liability for a violation of that duty properly, a plaintiff must establish the two prongs of Monell: (1) "that a 'policy or custom' led to the plaintiff's injury"; and (2) "that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of the jail's inhabitants.'" Castro v. County of Los Angeles, 833 F.3d 1060,1073, 1076 (9th Cir. 2016) (internal citations omitted).

To establish deliberate indifference for municipal liability, the court applies an objective standard. Id. at 1075. "'Where a § 1983 plaintiff can establish that the facts available to [municipal policymakers] put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of Monell are satisfied.'" Id., quoting City of Canton v, Harris, 489 U.S. 378, 396 (1989).

*Did Defendants Deny Plaintiff Treatment and Did Plaintiff Sustain a Constitutional Injury?*

As discussed above, the first prong of a Monell claim requires plaintiff to establish that the at-issue policy led to his injury. In this case, plaintiff is alleging that his failure to receive treatment for his mental health problems, including medication, caused his mental health to deteriorate.

---

[2] Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).

Defendants move for summary judgment on the grounds that plaintiff was not denied treatment for his claims of mental illness and mental distress. Defendants argue that plaintiff was examined by mental health staff 16 times, including a direct examination by staff psychiatrist Dr. Baker. Defendants also move for summary judgment on the grounds that plaintiff did not suffer any psychiatric injury or illness while incarcerated at the jail. Defendants argue that during his incarceration at the Butte County Jail, plaintiff was not observed by jail medical staff to have suffered or sustained any psychiatric illness.

In support of their arguments that plaintiff was not denied mental health treatment and did not have a serious mental health illness, defendants cite the declarations of defendant Honea (ECF No. 40) and registered nurse Andrea Thompson, the Program Manager for the California Forensic Medical Group ("CFMG") during plaintiff's incarceration at the Butte County Jail. (ECF No. 41 at 2.) In May 2017, CFMG was acquired by Correctional Medical Group Companies ("CMGC.") (Id.) Since that time, A. Thompson has been employed by CMGC in that same capacity as Program Manager. (Id.)

The undersigned herein sets forth the relevant statements from these declarations concerning plaintiff's mental health during his incarceration at the Butte County Jail.

Plaintiff came into the custody of the Butte County Jail on September 20, 2016, and was released on August 11, 2017. (ECF No. 40 at 2.) During plaintiff's incarceration at the jail, CFMG had a contract with defendant Honea to provide medical and mental health services to inmates in the Butte County Jail. (ECF 41 at 2.)

In her declaration, A. Thompson addresses plaintiff's mental health treatment and symptoms. A. Thompson states that her declaration is based on her review of plaintiff's medical records and discussion with CFMG mental health providers:

> 8. Mr. Hammitt's medical record file at the Butte County Jail totals 239 pages. These records were generated contemporaneously in the course and scope of Mr. Hammitt's medical treatment at the Butte County Jail. I have reviewed this entire file and base my statements below upon this file review. In addition, I have discussed Mr. Hammitt's mental health treatment directly with the CFMG mental health providers, including Dr. John Baker, and further base my statements below upon those discussion. I have personal and direct knowledge of the mental health treatment Mr. Hammitt received

6

> during his incarceration at the Butte County Jail and set forth this treatment history below.

(Id. at 40-41.)

The undersigned herein sets forth the section of A. Thompson's declaration addressing plaintiff's mental health treatment and symptoms. While the quote from this declaration is lengthy, it is necessary for the analysis of this portion of defendants' summary judgment motion.

> 9. At the time of his booking, Mr. Hammitt denied any and all medical and mental health issues, denied drug use, and denied psychiatric sick call. At that time of booking, he was advised how the sick call process works.
>
> 10. Specifically, Mr. Hammitt was told that blank slips are located in each jail housing unit. He was told that he may fill out a sick slip and place that sick slip in the locked box, also provided in each housing unit. The nursing staff retrieves completed sick slips from each box during each 12 hour shift.
>
> 11. Inmates submitting sick slips requesting mental health services or complaining of mental distress are seen and evaluated promptly (typically within 48 hours) by mid-level medical staff, consisting of a Marriage Family Therapist and a Licensed Clinical Social Worker. These staff are trained to evaluate an inmate's mental health condition to determine if examination by the staff psychiatrist, Dr. John H. Baker, is medically warranted. In cases of significant distress of symptoms, these staff have the means to obtain the prompt prescription of psychiatric medication.
>
> \*\*\*
>
> 14. I have direct knowledge that in those cases where medical staff have determined that an examination by Dr. Baker is medically warranted, Dr. Baker, in the exercise of his medical judgment, may determine that psychiatric medications in conjunction with illicit substances is contradicted. Dr. Baker does take an inmate's history, including illicit drug history, into account when evaluating patients for the purpose of determining appropriate treatment, including the timing of the administration of any psychiatric medication for those inmates who have a history of illicit drug use.
>
> \*\*\*
>
> 16. Jail medical staff do have in place a policy for inmates booked with current prescriptions for psychiatric medications. Upon confirmation of a current prescription, these medications are provided to the inmate for a period of seven days. Within that seven days, the inmate will be seen by Dr. Baker, who will assess and determine the patient's need to be on the current psychiatric medications.

17. Despite his many false statements to medical staff to the contrary, Mr. Hammitt did not have current medications when he was booked into the jail on September 20, 2016. Therefore, no medications were prescribed nor could any be prescribed. As set forth below, when Mr. Hammitt was evaluated by the jail's mental health staff, it was determined no medications were warranted. Medical staff determined repeatedly that Mr. Hammitt was not demonstrating symptoms of mental illness. To the contrary, it was determined that Mr. Hammitt was attempting to game the process in order to obtain drugs.

\*\*\*\*

19. On October 3, 2016, Mr. Hammitt placed his first sick slip pertaining to mental health.

20. Mr. Hammitt was evaluated by the CFMG mental health staff on October 5, 2016. There was no indication that an appointment with Dr. Baker was indicated at that time. The examination revealed: "Thought content is goal oriented, med focused. Thought Process is: organized, coherent. Overall Condition is stable."

21. The diagnosis was significant methamphetamine abuse, poor insight and medication-marketing behaviors. At this examination, Mr. Hammitt stated that he had his prescription medications at a Rite Aid in Sacramento. Seeking verification, staff determined that, in fact, there were no current medications for Mr. Hammitt. Rite Aid was able to do a central search for all Rite Aid stores.

22. On October 11, 2016, Mr. Hammitt placed another mental health sick slip. However, he refused sick call when offered on October 12, 2016.

23. On October 14, 2016, Mr. Hammitt placed another mental health sick slip and was evaluated by a different mental health care provider on October 16, 2016. At that time, Mr. Hammitt again demanded medications and an appointment with the psychiatrist. He stated repeatedly: "I want my meds." He continues to state: "I need some meds." There was no basis for an appointment with Dr. Baker at that time based upon the lack of a diagnosis for mental illness; there was no indication of mental illness. The examination revealed: "Overall condition is: in no distress. Behavior is: malingering."

24. Mr. Hammitt placed another mental health sick slip on October 21, 2016 and was evaluated on October 22, 2016, again, with no diagnosis of mental illness: there were "no clear symptoms or distress." Mr. Hammitt's condition was noted as "stable, in no distress." Mr. Hammitt had to be asked to leave the medical unit when he became verbally abusive, stating: "Hey lady, I had better get my meds." At that time, Mr. Hammitt's prior medical records were requested.

25. Mr. Hammitt's prior records were reviewed by mental health staff on October 27, 2016.

26. Mr. Hammitt placed additional sick slips on October 23 and 26, 2016. He was evaluated again on October 31, 2016 by mental health staff who rendered the same diagnosis as set forth above.

27. Mr. Hammitt placed another mental health sick slip on November 2, 2016, and was evaluated by medical staff that day. The evaluation revealed: "Overall condition is stable: in no distress." At that time, an appointment was made with the psychiatrist for November 22, 2016. Due to a scheduling conflict, the examination was reset for November 29, 2016.

28. A November 18, 2016, examination by jail medical staff revealed: "Thought process was organized, coherent. Overall condition is stable."

29. On November 29, 2016, Dr. Baker evaluated Mr Hammitt and diagnosed him with extensive drug abuse with a plan to continue recovery. Dr. Baker concluded that no psychiatric medications were indicated for Mr. Hammitt.

30. As of December 3, 2016, Mr. Hammitt had been examined by mental health staff at least eight times, including interviews by three different licensed clinicians and the psychiatrist. Mental health treatment records had been requested, received and reviewed. There was agreement among all of the medical staff that Mr. Hammitt was not suffering from mental illness and that there was no medical basis of psychiatric medication.

31. Mr. Hammitt was seen and examined by medical staff on March 10, 2017, still seeking medication, despite the conclusions by Dr. Baker. "He wants to be on meds." Overall condition is stable. The chart notes include the following under diagnosis: "Attempt to discuss pt's concerns. P states he needs to see psy MD other than Dr. Baker. Pt unable and/or unwilling to describe symptoms or explore possible non medicinal interventions. Seems focused on gathering legal requirements for 'my lawsuit.' Encouraged pt to put in sick slip if he would like to further discuss. Pt was already seen by Dr. Baker and current presentation lacks criteria for referral at this time. Fu prn."

\*\*\*

33. On March 15, 2017, Mr. Hammitt, pursuant to his request, was evaluated by an outside psychiatrist. This psychiatrist prescribed medication for Mr. Hammitt. The medications prescribed were Lansoprazole (for ulcer treatment), Gabapentin (nerve pain medication and an anticonvulsant), and Mirtazapine (antidepressant, aka Remeron). Mr. Hammitt was provided with that medication for the duration of his incarceration at the Butte County Jail.

\*\*\*

35. At no time during his incarceration at the Butte County Jail was Mr. Hammitt observed by jail staff to have suffered or sustained any psychiatric illness or injury.

> 36. Mr. Hammitt did not suffer or sustain any psychiatric illness or
> injury while incarcerated at the Butte County Jail.

(ECF No. 41 at 3-8.)

No medical records are attached to the declaration of A. Thompson.

Most of A. Thompson's declaration regarding plaintiff's mental health problems, including his treatment and symptoms, is inadmissible hearsay. For example, A. Thompson's statement that at the time of his booking, plaintiff denied all mental health issues is hearsay. A. Thompson's statement that plaintiff stated that he had prescriptions at Rite Aid when he was booked into the jail is hearsay. A. Thompson's statement that "staff determined" that there were no current medications for plaintiff is hearsay. Similarly, Ms. Thompson summarizing what information "CFMG mental health providers, including Dr. John Baker," provided to her is hearsay.

A. Thompson's statements regarding the examinations plaintiff received in response to his requests for mental health treatment contain inadmissible hearsay. For example, A. Thompson's statement that on October 5, 2016, CFMG staff determined that plaintiff did not require an appointment with Dr. Baker because his thought content was "goal oriented, med focused," is hearsay. A. Thompson's statement that on October 14, 2016, it was determined that there was no basis for an appointment with Dr. Baker because there was no indication of mental illness is hearsay. A. Thompson's statements regarding Dr. Baker's conclusions after examining plaintiff on November 29, 2016 are hearsay.

The undersigned also observes that while A. Thompson states that plaintiff's prior medical records were requested and reviewed, A. Thompson does not state from where the records were requested. A. Thompson also does not state what those prior records revealed regarding plaintiff's mental health treatment.

Defendants' primary evidence submitted in support of their arguments that plaintiff did not have a serious mental health problem and was not denied treatment for his claims of mental illness is inadmissible hearsay. Accordingly, the undersigned finds that defendants have not met their initial burden of demonstrating the absence of a genuine issue of material fact as to whether

plaintiff suffered or sustained any psychiatric illness while housed at the Butte County Jail and whether he was denied treatment for his claims of mental illness.³ While certain information provided by A. Thompson might ultimately be admissible at trial, defendants have failed to establish such an evidentiary basis at this juncture. Accordingly, defendants are not entitled to summary judgment on these grounds.⁴

*Did Defendants Have a Policy to Deny Mental Health Treatment to Inmates with a History of Drug Addiction?*

Defendants next move for summary judgment on grounds that the undisputed facts show that defendants did not have a policy to deny mental health treatment to inmates with a history of substance abuse/drug addiction. In support of this argument, defendants cite the declaration of defendant Honea who states, in relevant part,

> 8. Neither Butte County, nor I, as the Butte County Sheriff, has a policy or practice whereby Butte County Jail inmates are denied or refused mental health treatment based on an inmate's history of drug use.
>
> 9. Neither Butte County, nor I, as the Butte County Sheriff, has a policy or practice, whereby Butte County Jail inmates are refused psychiatric medications until they have been sober for 30 days.

(ECF No. 40 at 2-3.)

In her declaration, A. Thompson states, in relevant part,

> 12. Neither Butte County, the Butte County Sheriff, CFMG, nor CMGC, has a policy or practice, whereby Butte County Jail inmates are denied or refused mental health treatment based on an inmate's history of drug abuse.
>
> 13. Neither Butte County, the Butte County Sheriff, CFMG, nor

---

³ Defendants also argue that plaintiff's receipt of an antidepressant in March 2017 from an outside psychiatrist demonstrates only a difference of opinion with jail mental health providers, which does not rise to a constitutional violation. This argument is also based on inadmissible hearsay.

⁴ Medical records may be admissible under the business records exception to the hearsay rule, see Fed. R. Evid. 803(6), or if they contain statements made for the purpose of medical diagnosis or treatment. (Fed. R. Evid. 803(4). As stated above, defendants submitted no medical records in support of A. Thompson's declaration. In addition, defendants did not submit a declaration from Dr. Baker, who examined plaintiff on November 29, 2016.

11

> CMGC, has a policy or practice whereby Butte County Jail inmates
> are refused psychiatric medications until they have been sober for 30
> days.

(ECF No. 41 at 3-4.)

In his opposition, plaintiff submits the following evidence in support of his claim that defendants had a policy to deny mental health treatment to inmates with a history of substance abuse/drug addiction. Plaintiff has provided a medical record from October 12, 2016, which appears to have been prepared by Debbie Sager. (ECF No. 46 at 18.) The record states that plaintiff "says he wants to be on meds because he messed up and used drugs. He wants a treatment program and says meds will help him with process." (Id.) The section of the report titled "Followup Plan" states,

> General Note: Advised pt of medication procedures regarding outdated prescriptions. *Advised pt of baseline evaluation after 30 days clean for to re-evaluate if psy MD referral is appropriate.* Pt request automatic psy MD referral even after procedure was fully explained. Advised sick slip procedure for f/u prn. Attempted to encourage recovery and relapse prevention. Pt leaves room and says he will ask to see Pam.

(Id. (italics added).)

Plaintiff has also provided a record dated October 16, 2016 prepared by Pamela Johansen. (Id. at 20.) This record states, in relevant part,

> Inmate was just seen, but continues to ask for "his" meds. Cannot provide pharmacy, admits that he has no current doctor and meds were started while he was in prison. Admits heavy drug use. *Interrupts, admits he was already told that he needed "clean" time before referral to psych MD would be considered.* Angry, demanding. Provided very little information, just continued to state, "I need some meds." No obvious mental illness, woke up for the interview.
>
> Drug use, personality disorder. Clarified that mental health clinicians will continue to evaluate, but he will not automatically be given "appointment" to see psych MD unless he has clear symptons, distress. F/U prn.

(Id. (italics added).)

Defendants address the October 12, 2016 record quoted above in a footnote in the reply. (ECF No. 48 at 11, n. 11.) Defendants argue that this record is not evidence of a Butte County Jail-wide policy to deny and refuse mental health treatment for drug users. (Id.) "Rather, this is a

12

medical protocol that was explained to the plaintiff during his evaluation by mental health staff." (Id.)

The undersigned does not understand defendants' argument that the October 12, 2016 record merely describes "medical protocol." A reasonable inference from the two records discussed above is that the Butte County Jail had a policy to refer inmates suffering from drug addiction to a psychiatrist only after some period of "clean time." The October 16, 2016 record goes on to state that plaintiff would not see the psychiatrist unless he had "clear symptoms." It is not clear whether this meant that plaintiff would be referred to a psychiatrist if he showed clear symptoms before the end of his "clean time," or he would only be referred to a psychiatrist after his "clean time" if he showed "clear symptoms."

Plaintiff's exhibits create a disputed fact regarding whether defendants had a policy to deny mental health treatment by a psychiatrist to inmates with a history of substance addiction until they had some period of "clean time." Whether inmates with drug addiction could receive access to psychiatric medication before the end of their "clean time" is also unclear. Accordingly, the undersigned recommends that defendants' motion for summary judgment on grounds that they did not have a policy to deny inmates with a history of drug addiction access to a psychiatrist be denied.[5]

### B. Individual Capacity Claim Against Defendant Honea

Plaintiff's amended complaint names defendant Honea in his individual capacity. Plaintiff alleges that defendant Honea "instituted" the policy to deny mental health treatment to inmates with a history of drug addiction.

In the summary judgment motion, defendants cite the order screening the original complaint. (See ECF No. 8 (screening order).) In this order, the undersigned found that plaintiff's claims against defendants Butte County Jail and Sheriff Honea failed under Monell. (Id. at 3.) Defendants apparently construe this order as finding that the amended complaint only

---

[5] In making this recommendation, the undersigned observe that defendants do not argue that such a policy would not violate the rights of inmates in the jail and meet the deliberate indifference standard.

13

alleges claims pursuant to Monell.

The order screening the amended complaint did not state whether plaintiff had stated claims against defendant Honea in both his individual and official capacities. (See ECF No. 12.) However, as stated above, the amended complaint names defendant Honea in both is individual and official capacities. Plaintiff alleges that defendant Honea "instituted" the at-issue policy.

Under Section 1983, supervisory officials are not vicariously liable for actions of their subordinates. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). Rather, a supervisor may be held liable if there exists either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). Supervisory liability may be based on policy implementation rather than personal participation where the policy is "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Id. (internal quotations and citation omitted).

Plaintiff alleges that defendant Honea personally implemented a policy that denied mental health treatment to inmates with histories of drug abuse. As discussed above, defendants' evidence that plaintiff receive treatment for his mental health complaints and did not suffer a psychiatric illness while housed at the Butte County Jail is inadmissible.

Whether defendants had a policy to deny inmates with a history of drug abuse access to a psychiatrist until they had some period of "clean time" is a disputed fact. For this reason, defendant Honea should be denied summary judgment with respect to the claim brought against him in his individual capacity.

Accordingly, IT IS HEREBY ORDEED that the Clerk shall appoint a district judge to this action; and

IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF No. 38) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 19, 2018

*[signature]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Hamm2644.sj.kc